ACCEPTED
01-14-00724-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/19/2015 7:11:13 PM
CHRISTOPHER PRINE
CLERK

**NO. 01-14-00724-CV**

**IN THE FIRST COURT OF APPEALS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/19/2015 7:11:13 PM
CHRISTOPHER A. PRINE
Clerk

**RONNY PUGA AND RICKEY PUGA**
*Appellants,*

**v.**

**BARBARA SALESI**
*Appellee.*

APPEAL FROM THE 133RD JUDICIAL DISTRICT COURT
OF HARRIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. 2011-28575

**BRIEF FOR APPELLEE**

**FAUBUS KELLER & BURFORD LLP**
Dax O. Faubus
State Bar No. 24010019
1001 Texas Avenue, 11th Floor
Houston, Texas 77002
(713) 222-6400 – Telephone
(713) 222-7240– Facsimile
*dax-notice@fkblawfirm.com*
LEAD COUNSEL FOR APPELLEE

**Of Counsel:**
Courtney L. Culver
State Bar No. 24026683
*courtney@fkblawfirm.com*
Nadia I. Gire
State Bar No. 24076852
*nadia@fkblawfirm.com*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

IDENTITY OF PARTIES AND COUNSEL ............................................................ v

INDEX OF AUTHORITIES ................................................................................ vi

ORAL ARGUMENT REQUESTED ...................................................................... 1

STATEMENT OF THE CASE ............................................................................. 1

ISSUES PRESENTED FOR REVIEW ................................................................... 2

STATEMENT OF FACTS .................................................................................. 2

      A. Procedural Background ......................................................................... 2

      B. Factual Background ............................................................................. 4

      C. Testimony as to Damages at Trial ......................................................... 5

      D. The Jury Charge ................................................................................. 7

      E. The Jury's Verdict .............................................................................. 7

      F. The Motion to Disregard Jury Findings and The Judgment ................. 8

SUMMARY OF THE ARGUMENT ....................................................................... 8

ARGUMENT ................................................................................................... 10

I.     Reply to Issue One: Appellants failed to preserve any
       error for appeal on Appellee's claim, attorney's fees
       and declaratory judgment action, and the trial court's
       judgment was not in error as a matter of law ......................................... 10

      A.   Appellants Failed to Preserve any Error for
          Appeal ......................................................................................... 10

1.    Appellants Failed to Preserve Error on Appellee's claim, Attorney's Fees and Declaratory Judgment Action ...... 11

2.    Appellants Failed to Preserve Error Regarding their Claim for Attorney's Fees ............................................. 13

3.    Appellants Failed to Preserve Error on Appellee's Claim for Encroachment Damages .......................................... 14

B. Notwithstanding Appellants' Failure to Preserve Any Error, the Trial Court's Rulings and Judgment Should Still Stand .......................... 15

II.    Reply to Issue Two: Appellee was entitled to recover attorney's fees, in whole or in part, as a matter of law.............................. 15

A.    The Trial Court Properly Awarded Salesi's Attorneys Fees Against the Pugas ..................................................... 15

1.    This suit is not a trespass to try title claim, but is a boundary dispute that is proper under the DJA, which allows for the recovery of attorneys fees ..................... 15

2.    The "necessity" of fees is not a requirement in the question submitted to the jury under the DJA ............. 17

3.    Segregation of Appellee's attorneys fees was not required, and the 2012 Order as to the 2006 Survey did not fully resolve the property boundary and encroachment issues to limit attorneys fees ................. 21

4.    The trial court's modification of appellee's attorney's fees was proper ........................................................ 23

III.    Reply to Issue Three: Appellee was entitled to recover encroachment damages as a matter of law and the trial court properly awarded Appellee encroachment damages against Appellants ................................................... 24

IV. Reply to Issue Four: The trial court did not err on the issue of Appellants' attorney's fees and the trial court properly denied Appellants' attorney's fees against Appellee ......................................................................... 27

CONCLUSION ......................................................................... 28

CERTIFICATE OF SERVICE ......................................................... 29

CERTIFICATE OF COMPLIANCE ................................................. 30

APPENDIX

# IDENTITY OF PARTIES AND COUNSEL

| **Appellants** | **Counsel** |
|---|---|
| Ronny Puga<br>Rickey Puga | Richard L. Petronella<br>Petronella Law Firm, P.C.<br>SBN: 15852000<br>2421 Tangley, Suite 116<br>Houston, Texas 77002<br>(713) 965-0606 Telephone<br>(713) 965-0676 Facsimile<br>*Richard@petronellalawfirm.com* |

| **Appellee** | **Counsel** |
|---|---|
| Barbara Salesi, (now deceased),<br>Estate of Barbara Salesi | Dax O. Faubus<br>Courtney L. Culver<br>Nadia I. Gire<br>FAUBUS KELLER & BURFORD LLP<br>1001 Texas Ave., 11th floor<br>Houston, TX 77002<br>(713) 222-6400 Telephone<br>(713) 222-7240 Facsimile<br>*Dax-notice@fkblawfirm.com*<br>*Courtney@fkblawfirm.com*<br>*Nadia@fkblawfirm.com* |

# TABLE OF AUTHORITIES

## Cases:

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
   945 S.W.2d 812 (Tex.1997) .......................................................................

*Averitt v. Caudle*,
   NO. 11-07-00225-CV, 2009 WL 891034 (Tex. App.—Eastland Apr.
2, 2009, pet. denied) (mem. op.).................................................................

*Bocquet v. Herring*,
   972 S.W.2d 19, 21 (Tex.1998) ...................................................................

*Butnaru v. Ford Motor Co.*,
   84 S.W.3d 198, 211 (Tex.2002) .................................................................

*Cardiac Perfusion Serv. Inc. v. Hughes*,
   2012 WL 11949078 (Tex.App.—Dallas Jul. 27, 2012) ............................

*City of the Colony v. N. Tex. Mun. Water Dist.*,
   272 S.W.3d 699 (Tex.App–Fort Worth, 2008) .........................................

*Cruz v. Andrews Restoration, Inc.*,
   364 S.W.3d 817 (Tex.2012) .......................................................................

*Downer v. Aquamarine Operators, Inc.*,
   701 S.W.2d 238 (Tex.1985) .......................................................................

*Fairfield Fin. Grp. v. Synnott*,
   300 S.W3d 316 (Tex.App—Austin 2009, no pet.) ....................................

*Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*,
   739 S.W.2d 622 (Tex.App.—Dallas 1987, writ denied) ...........................

*Florey v. Estate of McConnell*,
   212 S.W.3d 439 (Tex.App.—San Antonio 2006, no pet.) ........................

*Gullo v. Chapa*,
   212 S.W.2d 299 (Tex. 2007) ......................................................................

*H.E. Butt Grocery Co. v. Bilotto,*
    985 S.W.2d 22 (Tex.1998) .......................................................................

*Holland v. Wal–Mart Stores, Inc.,*
    1 S.W.3d 91 (Tex.1999) ...........................................................................

*Hudspeth v. Hudspeth*,
    756 S.W.2d 29 (Tex.App—San Antonio 1988, writ denied) ....................

*Indian Beach Prop. Owners Ass'n v. Linden,*
    222 S.W.3d 682 (Tex.App.—Houston, [1ˢᵗ Dist.] 2007, no pet.) ..............

*Lile v. Smith*,
    291 S.W.3d 75 (Tex.App.—Texarkana 2009, no pet.) ..............................

*Martin v. Amerman*,
    133 S.W.3d 262 (Tex.2004), superseded by statute ................................

*Midland W. Bldg., L.L.C. v. First Serv. Air Conditioning Contractors, Inc*.,
    300 S.W.3d 738 (Tex.2009) (per curiam) ................................................

*Moore v. Pierson,*
    100 Tex. 113 (Tex.1906*)*...........................................................................

*Norrell v. Aransas County Navigation Dist. No. 1,*
    1 S.W.3d 296 (Tex.App.–Corpus Christi 1999, pet. dism'd) ...................

*Nw. Indep. School Dist. v. Carroll Indep. School Dist.*,
    441 S.W.3d 684 (Tex. App.—Fort Worth 2014, pet. denied) ...................

*Ragsdale v. Progressive Voters League*,
    801 S.W.2d 880 (Tex.1990) .....................................................................

*RDG P'ship v. Long*,
    350 S.W.3d 262 (Tex. App.—San Antonio 2011, no pet.) .......................

*Ridge Oil Co. v. Guinn Inv. Inc*.,
    148 S.W.3d 143 (Tex.2004) .....................................................................

*Spencer v. Eagle Star Ins. Co.,*
     876 S.W.2d 154 (Tex.1994) ........................................................................

*Stewart Title Guar. Co. v. Sterling,*
     822 S.W.2d 1 (Tex.1991) ..........................................................................

*Tony Gullo Motors I, L.P. v. Chapa,*
     212 S.W.3d 299 (Tex.2006) .......................................................................

*Wilson v. City of Port Lavaca,*
     407 S.W.2d 325 (Tex.App.–Corpus Christi 1966, writ ref'd n.r.e.) ............

## Statutes:

TEX. CIV. PRAC. & REM. CODE §37.009.................................................................

TEX. CIV. PRAC. & REM. CODE §37.004(c) ............................................................

TEX. R. CIV. P. 274 ...........................................................................................

TEX. R. CIV. P. 278 ...........................................................................................

TEX. R. CIV. P. 279 ...........................................................................................

## ORAL ARGUMENT IS REQUESTED

Appellee Barbara Salesi respectfully requests oral argument because she believes it will assist the court in its analysis of the disputed issues presented on appeal and will enable counsel to address any questions the court may have.

## STATEMENT OF THE CASE

On May 11, 2011, Barbara Salesi ("Appellee") filed suit against her neighbors Rickey Puga and Ronny Puga ("Appellants") seeking damages, a declaratory judgment and attorney's fees against Appellants for actions taken by Appellants against Appellee and her real property.[1] Appellants filed a general denial and asserted a claim for attorney's fees.[2] During the trial of this matter, the court entered a directed verdict as to Appellee's declaratory judgment and encroachment issues.[3]

The basis of the declaratory judgment and directed verdict was as to the boundary issues of the respective properties, as determined by the court-ordered survey, and the issue of Appellants' pipe encroachment.[4] The court granted the declaratory judgment as to the boundary and encroachment issues following the stipulations by the parties that acknowledged the encroachment by Appellants.[5] Further, following said stipulations, the court also granted the declaratory

---

[1] Clerk's Record, hereafter CR, 4-13.
[2] CR 14-15.
[3] Reporter's Record, hereafter RR, 32-38.
[4] RR 2:17-19.
[5] RR 2:17-19; RR 4:32-39; RR 6: Court Exhibit 1.

judgment and entered a directed verdict that Appellee's fence, in turn, was not encroaching onto Appellants' property.[6]

Following a jury trial on this matter, with a jury verdict in Appellee's favor,[7] the trial court entered a modified Judgment, modifying the attorneys fee award and encroachment damages as awarded by the jury, on July 29, 2014.[8] Appellants' appeal followed.[9]

## ISSUES PRESENTED

I.     Reply to Issue One: Appellants failed to preserve any error for appeal on Appellee's claim, attorney's fees and declaratory judgment action and the trial court's judgment was not in error as a matter of law.

II.    Reply to Issue Two: Appellee was entitled to recover attorney's fees, in whole or in part, as a matter of law.

III.   Reply to Issue Three:  Appellee was entitled to recover encroachment damages as a matter of law and the trial court properly awarded Appellee encroachment damages against Appellants.

IV.    Reply to Issue Four: The trial court did not err on the issue of Appellants' attorney's fees and the trial court properly denied Appellants' attorney's fees against Appellee.

## STATEMENT OF THE FACTS

### A.     *Procedural Background*

At the time of trial, Appellee sought damages from Appellants, including attorney's fees and costs; the cost of removing an encroaching fence post; the cost

---

[6] RR 2:17-19; RR 4: 32-39; RR 6: Court Exhibit 1.
[7] CR 29-41.
[8] CR 84-86.
[9] CR 95.

2

of replacing a survey iron Appellants removed from Appellee's property; the cost to remove and re-route piping Appellants wrongfully installed on Appellee's property; the cost to replace and install fence posts Appellants wrongfully removed from Appellee's property; and a declaration as to the boundaries of Appellee's property, that Appellee's fence was not on Appellants' property and that Appellants were encroaching onto her property.[10] Again, Appellants moved forward at trial under a general denial and blanket request for attorney's fees.[11]

Leading up to trial, on April 2, 2012, Appellee sought a Motion to Enforce Court Order, or in the Alternative, Motion to Order Survey in order to attempt to establish the correct property boundaries of Appellee's property: two boundary lines of which were relevant to establishing the boundary lines between Appellee and Appellants' respective properties.[12] The 2012 Motion to Enforce the 2006 Survey was necessitated by Appellants' continued failure to conduct themselves reasonably or work toward any possible resolution of the underling disputes with Appellee, thereby also increasing Appellee's attorney's fees.[13] Appellants failed to respond to the motion, and an order granting the motion was entered on April 23, 2012.[14]

---

[10] CR 16-27.
[11] CR 14-15.
[12] Supplemental Clerk's Record, hereafter SCR, 3-17.
[13] RR 5h: Plaintiff's Exhibits 10, 11, 12, 13, 14 and 15.
[14] SCR 18.

The issue of the disputed boundaries between Appellee and Appellant's properties, even in light of the court's prior 2012 order, remained a highly contested issue until trial. On the first day of trial, however, Appellant's stipulated to the boundaries established by the 2012 order and stipulated that Appellants' piping encroached onto Appellee's property. The parties further stipulated that Appellee owns the property located at 8609 Findlay Street and Appellants own the adjacent property located at 8514 Detroit Street.[15] Despite Appellants' allegations that the stipulations were never reduced to writing or marked as exhibits, the stipulations were, in fact, read into the record at trial[16] and were also written, adopted and executed by counsel and then marked as Court Exhibit 1.[17]

## B.    *Factual Background*

At trial, Appellee testified that Appellants requested to take down a portion of her fence and fence posts in order to make repairs to an underground pipe. She permitted Appellants to do so provided that they re-install the fence and fence posts once their work was done. Unbeknownst to Appellee, Appellants placed underground piping from their property onto Appellee's property. Appellants

---

[15] RR 2:19.
[16] RR 2:19.
[17] RR 6: Court Exhibit 1.

4

replaced one of Appellee's fence posts (as depicted in Appellee's Exhibits 8 and 24) on their own property.[18]

Appellee further testified that years later, in October 2010, Appellants' attorney sent a letter to Appellee threatening immediate litigation and demanding that Appellee remove her fence as it encroached six (6) inches onto Appellants' property. The letter also stated that fees and costs would be sought against her if Appellee failed to comply with counsel's demand.[19] The location of the fence then in dispute was only as a result of Appellant's own moving of the fence.[20] The relationship between the parties continued to deteriorate, and the underlying suit ensued.[21]

## C.     *Testimony as to Damages at Trial*

As to the damages sought at trial, Appellee testified that in order to replace the missing survey iron removed and discarded by Appellants and to reset the fence post, she incurred $972.68.[22] Appellee further testified that Appellants had damaged three (3) other fence posts on her property.[23] Appellee's expert Carl

---

[18] RR 3:16-21; 24-25; RR 5h: Plaintiff's Exhibit 24; and RR 5g: Plaintiff's Exhibit 8.
[19] RR 5h: Plaintiff's Exhibit 10; RR 3: 38-46.
[20] RR 5h: Plaintiff's Exhibit 11.
[21] CR 4–12.
[22] RR 3:48, 56.
[23] RR 3:53-56.

Johnson testified that Appellee would incur $648.19 to reposition the fence post onto Appellee's property and to replace and reset the other three (3) fence posts.[24]

Carl Johnson also testified that in order to correct Appellants' encroaching piping by removing and rerouting same from Appellee's property would cost $5,596.32 or $9,679.33, depending on the route taken.[25]

Appellee testified that she incurred at least $27,000 in attorney's fees that were paid by her father and which she would need to repay.[26] This testimony was further supported by Appellee's counsel, who testified that the reasonable and necessary attorney's fees through April 2014 (preceding trial) were $25,700,[27] while fees through and post trial would be approximately another $15,000: bringing fees through trial and post-trial in the range of $52,000.[28] Counsel also testified that fees incurred for any appeal to the Court of Appeals and/or Supreme Court would be an additional $15,000 and $10,000, respectively.[29]

Over the objection of Appellee's counsel, Appellants' counsel testified that he incurred attorney's fees in the amount of $53,425.22.[30] Also over the objection

---

[24] RR 3:123; RR 5a: Plaintiff's Exhibit 6A-1-a.
[25] RR 3:125-126; RR 5a: Plaintiff's Exhibit 6A-2; RR 5b: Plaintiff's Exhibit 6-A-3.
[26] RR 3:57-58.
[27] RR 3:138; RR 5h: Plaintiff's Exhibits 17 and 17A.
[28] RR 3:138-143.
[29] RR 3:141.
[30] RR 3:284-289; RR 4:7, 4:11.

of Appellee's counsel, Appellants' newly produced fee invoices were submitted as Defendants' Exhibits D-2 and D-2-A.[31]

### D. The Jury Charge

Appellants failed not only to object to the substance of the proposed jury charge submitted by Appellee, but likewise failed to tender *any* proposed questions for consideration by the court at the charge conference.[32] Appellants did not request a question to be submitted to the jury on their attorney's fees and did not object to the final jury charge's omission of a question on their attorney's fees.[33] Appellants did not object to Question 3 of the Charge, despite Appellants' allegations to the contrary, but instead objected generally to the granting of the directed verdict, which was overruled by the trial court.[34]

### E. The Jury's Verdict

After the court's directed verdict on the issue of encroachment and the declaratory judgment action,[35] the jury found that Appellants proximately caused the occurrence in question and awarded $612.04 to replace and reposition the fence post, $486.15 to replace any other fence posts and $972.68 to replace and reposition the subject survey iron.[36] The jury awarded $0.00 to Appellee for

---

[31] RR 4:7, 11; RR 6: Defendants' Exhibits D-2 and D-2-A.
[32] RR 4:41-43.
[33] RR 4:7-30; 41-43; CR 29-41.
[34] RR 4:41-43.
[35] RR 3:32–38.
[36] CR 29–33.

encroachment damages; $35,000 in attorney's fees; $0.00 in attorney's fees for any appeal to the Court of Appeals or Supreme Court; and did not find that Appellants acted with malice or that Appellee should be awarded punitive damages.[37]

### F.       *The Motion to Disregard Jury Findings and The Judgment*

Appellee moved to disregard the jury's award of $0.00 for encroachment damages (based on the uncontroverted testimony of Carl Johnson that removing and rerouting the encroaching piping would cost at least $5,596.32)[38] and the reduced attorney fee award of $35,000.[39] Appellants did not respond to the motion. The trial court entered judgment awarding the non-challenged jury findings and amending the encroachment damages and attorney's fees to $5,146.32 and $51,169.36, respectively.[40]

## SUMMARY OF THE ARGUMENT

Appellants failed to preserve any error for appeal. As such, this appeal should be denied in full.  Specifically, no error has been preserved to attack Appellee's attorney's fees and declaratory judgment action; no error has been preserved on the omission of Appellants' attorney's fees from the jury charge; and no error has been preserved on Appellee's encroachment damages, and the trial

---

[37] CR 34–41.
[38] RR 3:125-126; RR 5a: Plaintiff's Exhibit 6A-2; RR 5b: Plaintiff's Exhibit 6-A-3.
[39] CR 42-80.
[40] CR 84-86.

8

court's judgment did not err as a matter of law. Therefore, this Court should overrule Appellants' issue one.

Notwithstanding Appellants' failure to preserve error, their appeal should fail for other reasons too. First, the trial court properly awarded Appellee's attorney's fees against Appellants. To that end, (1) the underlying suit is not a trespass to try title claim, but is a boundary dispute that is proper under the Declaratory Judgment Act ("DJA"), which allows for the recovery of attorney's fees; (2) the "necessity" of fees is not a requirement in the question submitted to the jury under the DJA; (3) segregation of Appellee's attorney's fees was not required, and the 2012 order as to the 2006 Survey did not fully resolve the property boundary and encroachment issues to limit attorney's fees; and (4) the trial court's modification of Appellee's attorney's fees was unchallenged and proper, and this Court should overrule Appellants' issue two.

Next, the trial court properly awarded Appellee's encroachment damages pursuant to its directed verdicts, which were based on Appellants' own stipulations. Moreover, the evidence and testimony proffered by Appellee at trial regarding her encroachment damages was undisputed and uncontradicted by Appellants. Accordingly, the court's modification of the jury award from $0 to the amount proved at trial by Appellee was proper, and this Court should overrule Appellants' issue three.

Lastly, the trial court properly denied Appellants' attorney's fees against Appellee by virtue of the court's ruling on the directed verdicts and because Appellants neither tendered a question on their fees at the Charge Conference nor objected to the exclusion of such a question. As such, this Court should overrule Appellants' issue four.

## ARGUMENT

I.   Reply to Issue One: Appellants failed to preserve any error for appeal on Appellee's claim, attorney's fees and declaratory judgment action, and the trial court's judgment was not in error as a matter of law.

### A.   *Appellants Failed to Preserve any Error for Appeal.*

With respect to the award of attorney's fees to Appellee, Appellants assert that such an award was improper because even under the Declaratory Judgment Act ("DJA"), Section 37, *et seq*, attorney's fees cannot be awarded in this type of case, and if they could be, the "necessity" of the fees was not presented to the jury in the Charge.[41]  As to the issue of Appellants' not being awarded attorney's fees in this matter, Appellants assert that the trial court refused to submit a jury question as to the Pugas' fees.[42]  Lastly, Appellants claim that the award of encroachment damages, as determined by the lesser of two estimates by Appellee's expert (Carl Johnson) was not a proper method of calculating such damages, and therefore

---

[41] Appellants' Brief, 9-21.
[42] Appellants' Brief, 21-22.

10

encroachment damages should not have been awarded.[43] While the substantive merits as to why these issues were properly ruled on by the trial court will follow in more detail below in the subsequent sections, the record establishes that Appellants failed to object to any of the foregoing to preserve these issues for appeal.

1.     *Appellants Failed to Preserve Error on Appellee's claim, Attorney's Fees and Declaratory Judgment Action.*

Throughout the course of the underlying trial, the continued tactics by Appellants' counsel continued. Namely, the untimely submissions of required court filings and the disregard of Texas Rules of Civil Procedure.[44] Appellee's attorney's fee question was submitted to the jury with no objection from Appellants—either as to the question itself or the substance and wording thereof.[45] Moreover, Appellants made no objection to the introduction of the evidence on Appellee's total attorney's fees, which included fee invoices and testimony as to the reasonableness and necessity of same from the inception of this dispute through trial and any appeal. Pursuant to Texas Rule of Civil Procedure 274,

> A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

---

[43] Appellants' Brief, 22-24.
[44] RR 2:25, 2:27-29; RR 4:7, 4:9.
[45] RR 4:41-43; RR 4:49-51.

More specifically, with respect to Appellants' newly-raised argument that the jury question lacked the term "necessary," the Texas Supreme Court has found that when, in a jury trial, a portion of an issue is "omitted without objection, Rule 279 requires the issue be deemed as found by the trial judge in support of the judgment rendered."[46]  Texas Rule of Civil Procedure 279 provides:

> When a ground of recovery or defense consists of more than one element, if one or more such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, ... such omitted element or elements shall be deemed found by the court in such a manner as to support the judgment.[47]

When the trial court has expressly submitted some issues and excluded others, and neither party has put in writing a request for submission of those issues excluded, they "must be regarded in the appellate court as having acquiesced in such action and consented for the trial judge to determine from the evidence the issue not submitted."[48] With no objection by Appellants to the date range, amount, legal basis, form of the question or otherwise as to Appellee's attorney's fees, there was no preservation of error for this appeal.[49]

---

[46] *Moore v. Pierson,* 100 Tex. 113, 116 (Tex.1906).
[47] TEX. R. CIV. P. 279.
[48] *Moore v. Pierson,* 100 Tex. at 116*; Norrell v. Aransas County Navigation Dist. No. 1*, 1 S.W.3d 296, 304 (Tex.App.—Corpus Christi 1999, pet. dism'd).
[49] *Cruz v. Andrews Restoration, Inc*. 364 S.W.3d 817, 830 (Tex. 2012).

Furthermore, the trial court directed verdict in Appellee's favor regarding her declaratory judgment claim. The trial court based its directed verdict on Appellants' own stipulation that they were encroaching on Appellee's property.[50] At no time did Appellants ever challenge Appellee's pleadings seeking declaratory relief or any of Appellee's exhibits supporting same. Moreover, Appellants never challenged Appellee's claim for fees under the DJA.[51] It is well-settled that a party waives error if they "fail to properly except or otherwise raise the issue until after the judgment is signed."[52] Appellants neither specially excepted or otherwise objected to either the declaratory judgment claims or the submission of Appellee's fees. Additionally, while Appellants did object to the trial court's granting of the directed verdict, claiming general disagreement with the court's ruling, they failed to object to the encroachment damage question.[53] Appellants simply failed to preserve any error on Appellee's claims for attorney's fees and declaratory judgment.

2. *Appellants Failed to Preserve Error Regarding their Claim for Attorney's Fees.*

Appellants did not submit a proposed jury charge to the trial court.[54] Appellants did not submit a proposed question on their claim for attorney's fees.[55]

---

[50] RR 2:17-19; 22-23.
[51] RR 2:22-25.
[52] *Hudspeth v. Hudspeth*, 756 S.W.2d 29, 34 (Tex.App—San Antonio 1988, writ denied).
[53] RR 4:41-43.
[54] RR 4:41-43.

Appellants made no objections to the charge that was ultimately submitted to the jury.[56] In the face of clear and concise law to the contrary, Appellants now claim the trial court erred in failing to submit a question on their attorney's fee claim. The law on this issue is clear:

> failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment.[57] Further, "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.[58]

Appellants failure to submit a jury question on their fees falls solely on Appellants.[59] Again, Appellants failed to preserve any error on this point.

*3.*     *Appellants Failed to Preserve Error on Appellee's Claim for Encroachment Damages.*

At trial, Appellants did not object to, challenge or in any way contradict Appellee's evidence and testimony on her encroachment damages. Appellee submitted two estimates from her expert Carl Johnson that provided the costs to cure Appellants' undisputed encroachment onto Appellee's property.[60] Moreover,

---

[55] RR 4:41-43.
[56] RR 4: 41-43.
[57] TEX. R. CIV. PROC. 278.
[58] TEX. R. CIV. PROC. 279; *Wilson v. City of Port Lavaca*, 407 S.W.2d 325, 331 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.).
[59] RR 4:7-30; 41-43; CR 29-41.
[60] RR 2:23-25 and RR 3:112-131.

Appellant's proffered no expert of their own on the issue.[61] Appellants' failure to challenge or in any way dispute or contradict Appellee's encroachment damages and their failure to object to the encroachment damages question to the jury constitutes absolute waiver of any error.

### B. Notwithstanding Appellants' Failure to Preserve Any Error, the Trial Court's Rulings and Judgment Should Still Stand.

Even subject to Appellants' complete failure to preserve error, their challenges still fail on the merits, as error in the charge is nevertheless reviewed under an abuse of discretion standard that—had Appellants preserved error—likewise cannot be met.[62]

II. Reply to Issue Two: Appellee was entitled to recover attorney's fees, in whole or in part, as a matter of law.

### A. The Trial Court Properly Awarded Salesi's Attorney's Fees Against the Pugas.[63]

1. *This suit is not a trespass to try title claim, but is a boundary dispute that is proper under the DJA, which allows for the recovery of attorney's fees.*

Courts have held that a declaratory judgment action is proper, and resulting fees appropriate, in the context of a declaratory judgment action pertaining to real

---

[61] RR 27-28.

[62] TEX. R. CIV PROC. 274, 278 and 279; *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 37 (Tex.1998).

[63] Appellees agree with Appellants that the basis for fees sought by both parties, per their live pleadings, and the only claim for fees advanced at trial (by Appellee only) was limited to TEX. CIV PRAC. CODE §37.009. CR 4-13, 14 and 19; RR 2:17-19; RR 4:32-39.

property disputes over boundaries and encroachment.[64] Appellants cite to the *Martin* case for the proposition that a boundary dispute—just as was present in the underlying suit—is prohibited under the DJA.[65] Notably, that case was superseded by statute with the addition of subsection (c) to §37.004 of the DJA, which reads, in pertinent part, that a boundary claim under the DJA is proper in that a party[66] "may maintain a determination under this chapter when the sole issue concerning title is the determination of the proper boundary line between adjoining properties."[67] The DJA, therefore, squarely applies to this case because the dispute between Appellee and Appellants primarily revolves around their dispute as to the boundaries of their properties.[68] Further, courts have also held that even in the context of a claim under the DJA to quiet title, fees may be recoverable.[69]

The core dispute between the parties was the existence of boundaries between their respective properties, as it impacted the fence posts, the piping and their respective property rights and interests thereto.[70] Appellants contend that a portion of Appellee's fence was on their property while Appellee contended that

---

[64] *Nw. Indep. School Dist. v. Carroll Indep. School Dist.*, 441 S.W.3d 684, 692 (Tex. App.—Fort Worth 2014, pet. denied); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 449 (Tex.App.—San Antonio 2006, no pet.); *RDG P'ship v. Long*, 350 S.W.3d 262, 277 (Tex. App.—San Antonio 2011, no pet.); *see generally Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998).
[65] *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004), superseded by statute.
[66] *Nw. Indep. School Dist. v. Carroll Indep. School Dist.*, 441 S.W.3d at 687.
[67] TEX. CIV. PRAC. & REM. CODE §37.004(c).
[68] *Lile v. Smith*, 291 S.W.3d 75, 78 (Tex.App.—Texarkana 2009, no pet.).
[69] *Fairfield Fin. Grp. v. Synnott*, 300 S.W3d 316, 323 (Tex.App—Austin 2009, no pet.).
[70] CR 4-36.

Appellants' piping was on her property.[71] Both assertions necessitated the establishment of the parties' land boundaries. This dispute of boundaries and property rights was ultimately established by the parties' written stipulations at trial:

> The parties stipulate that the pvc pipe as depicted in Plaintiff's Exhibit 8 was installed by Defendants and runs from the Puga property onto the Salesi property and connects to the concrete pipe that runs through the Salesi property."
>
> …
>
> The parties further stipulate that the plaintiff owns the property located at 8609    Findlay Street and the defendants own the property located at 8514 Detroit Street.

Based upon the stipulations of the parties, and the trial court's directed verdict on the encroachment and boundary issues under the DJA,[72] the trial court conclusively established both issues in Appellee's favor. Moreover, Appellants have failed to establish that the trial court's award of fees was clearly an abuse of discretion or was inequitable or unjust.[73]

2.   *The "necessity" of fees is not a requirement in the question submitted to the jury under the DJA.*

Appellants contend that the question submitted to the jury was defective and constitutes reversible error as an abuse of discretion, in that the proposed question submitted by Appellee (as mentioned above and unchallenged by Appellants at

---

[71] RR 5h: Plaintiff's Exhibits 10-15.
[72] RR 2:17-18; 4:32-38.
[73] *Bocquet v. Herring*, 972 S.W.2d at 21.

trial) did not use the term "necessary" with respect to the attorney's fees sought. Appellants cite to the Texas Pattern Jury Charge to argue that the term "necessary" must be included in the question.[74] Texas law has held that pattern jury charges are recommendations and are not law.[75]

Appellants are correct that the award of attorney's fees under a statute is a question of law, which is reviewed de novo.[76] Accordingly, the jury's finding on the amount of reasonable and necessary attorney's fees is immaterial to the ultimate issue of whether such fees are recoverable as equitable and just—as determined by the trial court.[77] Additionally, an award of attorney's fees under the DJA is reviewed for abuse of discretion.[78] An award of attorney's fees is not an abuse of discretion if some evidence reasonably supports the trial court's decision.[79] To hold otherwise would require a finding by this Court that the trial court acted without reference to any guiding rules or principles, such that the decision as to Appellee's fees was arbitrary or unreasonable.[80]

Appellants have failed to cite to a single case that actually states that the issue of "necessity" must be submitted to the jury for determination. Instead, courts

---

[74] Appellants' Brief, 17.
[75] *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d at 37.
[76] *Indian Beach Prop. Owners Ass'n v. Linden*, 222 S.W.3d 682, 695 (Tex.App.—Houston, [1st Dist.] 2007, no pet.).
[77] *Id.* citing *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex. 1999); TEX. CIV. PRAC. & REM CODE §37.009.
[78] *Bocquet v. Herring*, 972 S.W.2d at 21.
[79] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).
[80] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

have held that where the ultimate award of fees rests solely within the discretion of the trial court, such an award must not be disturbed unless the appellate court finds that the trial court abused its discretion in awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust.[81] Also, even a finding that attorney's fees are reasonable and necessary does not dictate that such fees will be awarded under the DJA; such fees must ultimately be awarded by the trial court as equitable and just.[82] Importantly, although a trial court may submit a jury question on the amount of reasonable and necessary attorney's fees, such a question is not required, as the trial court retains the sole authority to award fees under the DJA.[83] Here, Appellee offered more than sufficient evidence of both the reasonableness and necessity of her fees, such that the resulting fee award can neither be found to lack evidence of reasonableness or necessity nor to be inequitable or unjust.[84] Even in light of the *Andersen* factors, which are relevant only to the jury's determination of reasonableness (which is not challenged by Appellants), the fee award is supported by sufficient, uncontroverted evidence to support the reasonableness requirement and the ultimate award by the court as equitable and

---

[81] *Bocquet v. Herring*, 972 S.W.2d at 21.
[82] *Ridge Oil Co. v. Guinn Inv., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004).
[83] *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 754 (Tex.App–Fort Worth, 2008).
[84] RR 3:138-168; RR 5h: Plaintiff's Exhibits 17 and 17A.

just: Appellee proved both the reasonableness and necessity of the fees sought.[85] Appellee met her burden to prove attorney's fees.[86]

Further, in order to show the reasonableness and necessity of attorney's fees, the party asserting fees must only show that the fees were incurred while suing the party opposing fees, pursuant to a claim that allows for the recovery of fees.[87] As shown repeatedly herein, Appellee more than met this burden of proof to support her fee award. The trial court found the fees sought by Appellee to be both reasonable and necessary and equitable and just and did not abuse its discretion in making such a finding.[88]

Moreover, a question that "calls for a finding beyond the province of the jury, such as a question of law, may be deemed immaterial."[89] As here, the award of attorney's fees rests within the sole discretion of the trial court, such that any omission of the term "necessary" in conjunction with the term "reasonable"—even if Appellants had preserved this issue for appeal—is immaterial. Under such a scenario of an immaterial issue, the court is not bound a jury's finding—or lack of finding—as to same.[90]

---

[85] RR 3:138-168; *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).
[86] *Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994).
[87] *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d at 10.
[88] CR 84-86.
[89] *Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d at 157.
[90] *Id.*

*3.    Segregation of Appellee's attorney's fees was not required, and the 2012 Order as to the 2006 Survey did not fully resolve the property boundary and encroachment issues to limit attorney's fees.*

First, no objection to the presentation or submission of Appellee's fees, in total, was made or error preserved by Appellants.[91] An objection to a alleged party's failure to segregate attorney's fees must be made by the party opposing the fees, and the party asserting fees must refuse to segregate, in order for the segregation of fees to be considered on appeal.[92] Nevertheless, had the foregoing actually occurred, which it did not, segregation of fees is not required here. A recognized exception to segregation of fees exists when the party's attorney's fees are "in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution and defense entails proof or denial of essentially the same facts.'"[93] There was no distinction between the acts of the Defendants, and the overlap of facts between the declaratory judgment and negligence claim is indistinguishable such that attorney's fees are not capable of segregation.[94] Therefore, because Appellee's claims are based upon the same set of facts and

---

[91] RR 4:41-43; 49-51; RR 3:138-68.
[92] *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d at 11.
[93] *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex. 1991), citing *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624-25 (Tex.App.—Dallas 1987, writ denied).
[94] *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313-14 (Tex. 2006).

inseparable from each other, the entire amount of attorney's fees sought by Appellee is recoverable and not subject to segregation.[95]

Appellants for the first time on appeal attack Appellee's attorney's fee claim on the basis that the April 23, 2012, order resolved the declaratory judgment claim; which bars any fees thereafter.[96] Appellants' failure to object or dispute Appellee's attorney's fee claim on this basis constitutes waiver of that ground for appeal. Moreover, the issue of boundaries and encroachment was very much a disputed issue between the parties, up until and through trial.[97] While Appellants argue that the "only" finding that addressed the declaratory judgment claim must have been the April 23, 2012[98] order, they brazenly overlook the parties' own stipulations on this issue and the trial court's directed verdict as to same, both of which were entered after trial had commenced.[99] Despite the Court's 2012 order establishing the boundaries of Appellee's property and her neighbor's property (a non-party to the underlying action),[100] the issue of Appellee and Appellants' property boundaries and any encroachment by one or the other onto the other's respective property was a critical issue still contested up until the trial on this

---

[95] *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d at 11.
[96] Appellants' Brief, 18-21.
[97] The 2012 Motion to Enforce the 2006 Survey was necessitated by Appellants' continued failure to conduct themselves reasonably or work toward any possible resolution of the underling disputes with Appellee, thereby also increasing Appellee's attorney's fees; RR 5h: Plaintiff's Exhibits 10, 11, 12, 13, 14 and 15.
[98] SCR:12.
[99] RR 2:17-19; RR 4:32-38; 6: Court Exhibit 1.
[100] SCR: 12.

22

matter.[101]  As such, the 2012 order did not address the boundary and encroachment-related declaratory judgment claims to resolve all disputes in this matter, such that an award of attorney's fees related to those claims after the 2012 order was proper.  Accordingly, any request to reduce or cap Appellee's attorney's fees must fail.

*4.    The trial court's modification of Appellee's attorney's fees was proper.*

Subject to the preceding analysis as to the award of attorney's fees to Appellee by the trial court as equitable and just, the trial court's modification of the fees was appropriate. A jury's award of substantially less attorney's fees is improper where the party seeking recovery offers evidence of the attorney's fees incurred and the value thereof.[102]  Where, as here, the moving party offers evidence of attorney's fees, a jury's answer awarding substantially less is improper and may be rejected by the trial court:  the ultimate award of which rests solely with the trial court.[103] Because Appellee introduced attorney's fee testimony as to the reasonableness and necessity of attorney's fees through trial and post trial motions, uncontradicted by Appellants, the jury improperly awarded a lesser amount unsupported by the evidence.[104]  When the evidence is clear and direct and not contradicted by any other witness, it is improper for a fee award not to comport

---

[101] RR 2:17-19; RR 4:32-38; 6: Court Exhibit 1.
[102] *Midland W. Bldg., L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex.2009) (per curiam).
[103] *RDG P'ship v. Long*, 350 S.W.3d at 279.
[104] RR 3:138-168; CR 58.

with the evidence presented.[105] The trial court acted within its discretion and pursuant to applicable law in modifying the Judgment to allow for the recovery of the total fees supported by Appellee's evidence at trial, in excess of that awarded by the jury, as equitable and just.[106]

III.   Reply to Issue Three: Appellee was entitled to recover encroachment damages as a matter of law and the trial court properly awarded Appellee encroachment damages against Appellants.

Appellants assert that encroachment damages, as found by the trial court in the Final Judgment of $5,146.32,[107] which modified the jury's findings of $0.00,[108] was an abuse of discretion.[109] Their argument seems to suggest that it was improper for Appellee's expert (an estimator) to testify and offer evidence that two possible methods of removal could be used to remove the Appellants' encroaching pipe from Appellee's property.[110] This expert testimony and evidence was uncontroverted by Appellants and they failed to disclose, designate, call or otherwise offer any controverting expert or evidence.[111] Appellee's expert, Carl Johnson, offered testimony that two possible methods of pipe removal could be implemented to remove the offending and encroaching pipe: one being more invasive, and more costly, than the other in the respective amounts of $5,146.32

---

[105] *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).
[106] CR 84-86.
[107] CR 84-86.
[108] CR 57.
[109] Appellants' Brief, 23-24.
[110] Appellants' Brief, 23-24.
[111] RR 3:112-131; RR 2:23-25; 27-28.

and $9,679.33.[112] Bids supporting both estimates were also admitted into evidence.[113] Appellants did not object to or contest either bid[114] and did not object to Mr. Johnson's testimony.[115] Appellants now contend that these two alternate bids contradict each other, such that any award of damages by the trial court was an abuse of discretion.[116] This argument, even if it had been preserved for appeal, fails.

Appellants cite to the *Ragsdale* case for the proposition that an expert witness's testimony must be free from contradiction; however, the *Ragsdale* case dealt with the testimony of an interested witness, namely a party to the suit, and not an independent expert.[117] Nevertheless, even under *Ragsdale,* when testimony of a interested witness is not contradicted by another witness and is clear from inaccuracies that tend to cast suspicion, such testimony is taken as true as a matter of law.[118] The court may then award damages as a matter of law, "especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so."[119] Here, Appellants failed to object to or in any way

---

[112] RR 3:112-131.
[113] RR 5a: Plaintiff's Exhibit 6-A-2; RR 5b: Plaintiff's Exhibit 6-A-3.
[114] RR 3:112-131; RR 2:23-25; 27-28.
[115] RR 3:188-263;
[116] Appellants' Brief, 23-24.
[117] *Ragsdale v. Progressive Voters League*, 801 S.W.2d at 882.
[118] *Id.*
[119] *Id.*

challenge the evidence and testimony as to the two scenarios to remedy the encroachment and therefore waived any objection.[120]

Nevertheless, the presentation of two proposed theories of damages is not error.[121] These two bids were alternate remedies to cure the same encroachment, and while they offer two methods of removing the pipe, they do not conflict. The end result of removing the pipe and curing the encroachment is the unified purpose of both estimates. Further, a jury may not award $0.00 when doing so is against undisputed evidence.[122] Similar to a party's available election of the most favorable theory of recovery,[123] Appellee was entitled to elect under which scenario of removal she wished to proceed: she chose the less expensive of the two methods ($5,146.32) and sought modification of the $0.00 award for that amount.[124]

The trial court did not abuse its discretion in modifying the jury's answer of $0.00 for encroachment damages because the evidence and testimony overwhelmingly and undisputedly supported a finding of at least $5,146.32.[125] As such, the court should deny any challenge to this award.

---

[120] *Cardiac Perfusion Serv. Inc. v. Hughes*, 2012 WL 11949078, at *6-7 (Tex.App.—Dallas Jul. 27, 2012).
[121] *Id.; Averitt v. Caudle*, NO. 11-07-00225-CV, 2009 WL 891034, at *4 (Tex. App.—Eastland Apr. 2, 2009, pet. denied) (mem. op.).
[122] *City of the Colony v. North Texas Mun. Water District*, 272 S.W.3d at 754.
[123] *Gullo v. Chapa*, 212 S.W.2d at 314.
[124] CR 42-83.
[125] CR 84-86.

IV.    Reply to Issue Four: The trial court did not err on the issue of Appellants' attorney's fees and the trial court properly denied Appellants' attorney's fees against Appellee.

The trial court, having granted the directed verdict on the encroachment and boundary issues[126] and awarding attorney's fees pursuant to the DJA in favor of Appellees,[127] acted within its discretion. As stated above, Appellants made no objections to the charge.[128] Further, Appellants *never* submitted a question as to their attorney's fees for the trial court's consideration, such that this issue is not likewise properly before this court.[129]

While it is true that fees under the DJA are discretionary and need not necessarily be awarded to a prevailing party, any fee award (to a prevailing party or otherwise) is within the trial court's sole discretion[130] and a party asserting its right to attorney's fees must submit a question on the issue or object to the omission of such a question.  Failure to do so is simply an absolute bar to object for the first time on appeal.

---

[126] RR 4:32-39.
[127] RR 4:32-39; RR 2:17-19; CR 84-86.
[128] RR 4: 41-43.
[129] RR 4:7-30; 41-43; CR 29-41; *Cruz v. Andrews Restoration, Inc.* 364 S.W.3d 817, 830 (Tex. 2012).
[130] *City of the Colony v. North Texas Mun. Water District*, 272 S.W.3d at 754.

## CONCLUSION

For the reasons stated in this brief, Appellee Barbara Salesi respectfully requests that this appellate court deny Appellants' appeal in full, and allow the trial court's judgment to stand in favor of Appellee.

Respectfully submitted,

**FAUBUS  KELLER &  BURFORD LLP**

By:    */s/ Dax O. Faubus*
        Dax O. Faubus
        State Bar No. 24010019
        1001 Texas Avenue, 11th Floor
        Houston, Texas 77002
        (713) 222-6400 – Telephone
        (713) 222-7240– Facsimile
        *dax-notice@fkblawfirm.com*

        ***Lead Counsel for Appellee***

**Of Counsel:**
Courtney L. Culver
State Bar No. 24026683
*courtney@fkblawfirm.com*
Nadia I. Gire
State Bar No. 24076852
*nadia@fkblawfirm.com*
**FAUBUS  KELLER &  BURFORD LLP**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been served on all counsel of record on March 19, 2015.

***Via E-Service and E-mail:***
Richard L. Petronella
Petronella Law Firm, P.C.
2421 Tangley, Suite 116
Houston, Texas 77002
*Richard@petronellalawfirm.com*

<div align="center">

*/s/ Dax O. Faubus*
</div>

Dax O. Faubus
*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Texas Rules of Appellate Procedure 9.4(i)(3) because it contains 6,595 words, excluding the parts of the brief exempted by Texas Rules of Appellate Procedure.

This brief complies with the typeface requirements of Texas Rules of Appellate Procedure and the type-style requirements of Texas Rules of Appellate Procedure because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Mac 2014 Version 14.2.2 in 14-point Time New Roman font.

*/s/ Dax O. Faubus*
Dax O. Faubus
*Counsel for Appellee*

## IN THE FIRST COURT OF APPEALS

RONNY PUGA AND RICKEY PUGA
*Appellants,*

**v.**

BARBARA SALESI
*Appellee.*

APPEAL FROM THE 133RD JUDICIAL DISTRICT COURT
OF HARRIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. 2011-28575

### APPELLEE'S APPENDIX

Dax. O. Faubus
State Bar No. 24010019
FAUBUS KELLER & BURFORD LLP
1001 Texas Ave., 11th Floor
Houston, Texas 77002
(713) 222-6400 – Telephone
(713) 222-7240 – Facsimile
*dax-notice@fkblawfirm.com*

LEAD COUNSEL FOR APPELLEE

Of Counsel:

FAUBUS KELLER & BURFORD LLP
Courtney L. Culver
State Bar No. 24026683
Nadia I. Gire
State Bar No. 24076852

# **TABLE OF CONTENTS**

TEXAS CIVIL PRACTICE & REMEDIES CODE § 37.004(c) ................................... Tab 1

TEXAS CIVIL PRACTICE & REMEDIES CODE § 37.009 ....................................... Tab 2

TEXAS RULE CIVIL PROCEDURE 274 ............................................................... Tab 3

TEXAS RULE CIVIL PROCEDURE 278 ............................................................... Tab 4

TEXAS RULE CIVIL PROCEDURE 279 ............................................................... Tab 5

# TAB 1

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.004

§ 37.004. Subject Matter of Relief

Effective: June 15, 2007
Currentness

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

(c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 2007, 80th Leg., ch. 305, § 1, eff. June 15, 2007.

Notes of Decisions (469)

V. T. C. A., Civil Practice & Remedies Code § 37.004, TX CIV PRAC & REM § 37.004
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 2

> Vernon's Texas Statutes and Codes Annotated
>   Civil Practice and Remedies Code (Refs & Annos)
>     Title 2. Trial, Judgment, and Appeal
>       Subtitle C. Judgments
>         Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.009

§ 37.009. Costs

Currentness

In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (690)

V. T. C. A., Civil Practice & Remedies Code § 37.009, TX CIV PRAC & REM § 37.009
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 3

Vernon's Texas Rules Annotated
　Texas Rules of Civil Procedure
　　Part II. Rules of Practice in District and County Courts
　　　Section 11. Trial of Causes
　　　　D. Charge to the Jury

TX Rules of Civil Procedure, Rule 274

Rule 274. Objections and Requests

Currentness

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable. No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Sept. 20, 1941, eff. Dec. 31, 1941; July 15, 1987, eff. Jan. 1, 1988.

**Editors' Notes**

**GENERAL COMMENTARY--1966**

　　Following is an excerpt from an address delivered by James P. Alexender before the Judicial Section of the State Bar of Texas, July 3, 1941.

　　"The rule here under consideration is intended to curb the abuses now prevailing in which some attorneys apparently overload the record with unnecessary objections or requested issues, with the hope that the objection or request will be sufficient to preserve the error and cause a reversal, but so concealed as to be overlooked by the trial court.

　　"It has long been the rule that an objection to a charge which is concealed in veiled and uncertain terms so that it does not point out the objection clearly and specifically, and make the error reasonably apparent to the court, is insufficient. It is believed that an objection that is concealed in a mass of immaterial and untenable objections, is as effectively smothered and concealed as is one that is couched in veiled and uncertain language. If an attorney who has only one or two valid objections can not point out such objections in less than ten or fifteen pages, the appellate court has a right to assume that the attorney has not made a good-faith effort to call the errors to the attention of the court for the purpose of having same corrected. Likewise, if he has only one or two valid requested issues and submerges them by requesting a 'bundle' of issues, he must be held to have waived the error. It is the duty of the attorney as an officer of the court to aid the court in bringing about a fair trial according to law. If he deserts his post and sets out to conceal the errors and thus entrap the court, he must be held to have been 'caught in his own trap.'

　　"The rule does not lay down any standard to be used for determining when the objections will be considered as too long or the requested issues too numerous. Necessarily, no exact standard could be furnished. Obviously, a violation of this rule will constitute a matter of degrees. It should be applied with caution, and considerable latitude should be accorded in favor of good faith on the part of the attorney. It is designed to correct palpable abuses. A reasonable court

will have no difficulty in applying it. Trial judges should remember that the rule has been adopted for their protection in those cases where they exercise good faith in an effort to discover the defects in the charge, but are unable to do so. Judges should not rely on it as a justification for their own lethargy. They must yet exercise the highest degree of caution to see that the case is properly submitted to the jury. Courts of Civil Appeals should resort to the rule in order to justify an affirmance of the case only when the record discloses that the trial judge has been improperly imposed upon by the attorney who seeks the reversal.

"When the trial judge is convinced that an attorney is attempting to conceal valid objections or requested issues by unfounded objections or unnecessary requests, the judge should file with the clerk, and have brought up with the record, a certificate showing the extent of the objections made and the number of issues requested, in order that the appellate court may be able to view the matter from the same viewpoint as that which confronted the trial judge at the time he was required to make his ruling."

See also Rule 271, General Commentary.

Following is an excerpt from Stayton, Analysis of Changes, 4 Texas Bar J. 667 (1941), pertaining to the 1941 Amendment.

"In the rules upon submission of special issues, as has been already mentioned, it is required that the special issues that are submitted must be raised by the *written* pleadings. This requirement was made because under rule 67, as has been explained, the case could come up to the time of submission without any pleading at all or without pleading upon numerous issues and could thus remit the court to the proof in order to ascertain the issues to be submitted. Of course, this result could be avoided by objection when the testimony came in, but in the absence of objection the proof instead of the pleading would present the issues. The desirability of a written guide for the judge has been pointed out in 20 T.L.R. 21 and 22. The present amendment requires that by the time of submission any issues that are submitted must be based upon written pleading. This means that if at that time written pleading is not at hand it should be supplied by amendment. But here again, if the opposite party is content to have issues submitted that are not raised by written pleading, e.g., if he does not object upon such a ground, the submission of issues not raised by written pleading will not be error."

## OPINIONS OF SUBCOMMITTEE ON INTERPRETATION OF RULES

### Defective pleadings

"Allegations of conclusions of law should be treated as good pleadings unless fair notice is not given by them and should even then be considered as sufficient unless objection on that ground is made to them. See Rules 67, 70 and 274." 6 Texas B.J. 77 (1943); 8 Texas B.J. 33 (1945).

### Omission of pleading

"Issues submitted without written pleadings to support them will not be erroneous upon that ground unless objection upon that ground is made." 6 Texas B.J. 77 (1943); 8 Texas B.J. 33 (1945).

The decision of the Supreme Court in Bednarz v. State, 176 S.W.2d 562, in which a judgment largely in favor of defendant was affirmed although defendant filed no answer whatever, does not mean that a written answer is immaterial. Where such an omission occurs, plaintiff may have a default judgment or he may request the court to require an answer to be filed. See Rules 90, 91, 268, 274 and 66. If plaintiff is content to try the matter without an answer, he has no ground to complain. See Rule 67, 7 Texas B.J. 80 (1944); 8 Texas B.J. 43 (1945).

### Appeals from justice to county court

While the written pleadings in the county court are the pleadings upon which the case is tried, if the trial is upon certain proof that is variant from or has no support in the written pleadings, but no objection or the like is made to the variance or departure, Rule 67 applies and it will be as though there had been sufficient pleading. See also Rule 66 as to ready amendment if objection is made. Upon a special issue submission, "all pleadings relied upon in the submission would have to be in writing, under Rules 67, 277, and 279, unless the defect should be waived under Rule 274." 5 Texas B.J. 287 (1942); 8 Texas B.J. 19 (1945).

Notes of Decisions (790)

Vernon's Ann. Texas Rules Civ. Proc., Rule 274, TX R RCP Rule 274
Current with amendments received through August 15, 2014

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 4

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 11. Trial of Causes
        D. Charge to the Jury

TX Rules of Civil Procedure, Rule 278

Rule 278. Submission of Questions, Definitions, and Instructions

Currentness

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence. Except in trespass to try title, statutory partition proceedings, and other special proceedings in which the pleadings are specially defined by statutes or procedural rules, a party shall not be entitled to any submission of any question raised only by a general denial and not raised by affirmative written pleading by that party. Nothing herein shall change the burden of proof from what it would have been under a general denial. A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party. Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

**Credits**
July 15, 1987, eff. Jan. 1, 1988.

**Editors' Notes**

**COMMENT--1988**
    Formerly a part of Rule 279.

Notes of Decisions (307)

Vernon's Ann. Texas Rules Civ. Proc., Rule 278, TX R RCP Rule 278
Current with amendments received through August 15, 2014

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 5

<div style="border:1px solid">

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 11. Trial of Causes
        D. Charge to the Jury

</div>

TX Rules of Civil Procedure, Rule 279

Rule 279. Omissions From the Charge

Currentness

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant.

**Credits**
Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 31, 1941, eff. Sept. 1, 1941; July 15, 1987, eff. Jan. 1, 1988; Dec. 16, 1987, eff. Jan. 1, 1988.

**Editors' Notes**

**COMMENT--1988**
    First paragraph transferred to Rule 278.

**GENERAL COMMENTARY--1966**
    Following is an excerpt from J. B. Dooley, "The Use of Special Issues Under the New State and Federal Rules," 20 Texas L.Rev. 32 (1941).

    **Affirmative issues raised only by general denial**

    "The rules contain several provisions that have for their purpose the reduction of the number of issues that are to be submitted to the jury. One field that has greatly extended the number of issues is what I designate as the field of *inconsistent theories*. By this is meant the theories of the case that are inconsistent with plaintiff's theory of recovery, or of the defendant's specially pleaded theory of defense, which under the present statute may be raised by a general denial, and upon which the burden of proof is on the opposite party from the one relying on such inconsistent theory. For example, in a suit to recover a broker's commission, the defendant, under a general denial, may present evidence that another was the procuring cause of the sale, and if the evidence is sufficient to raise the issue he is entitled to have a question thereon submitted to the jury. Similarly, the defendant under the general denial may raise, and be entitled to

have submitted to the jury, an issue as to whether the oral contract as actually made by the parties was different from that alleged by plaintiff; or that the defendant bought 'subject' to the debt sued for, and did not 'assume' it as claimed by plaintiff; or in a workmen's compensation case that the employee's present disability was caused by a prior illness or disability; or in a tort case that the injury complained of was caused by an unavoidable accident. Numerous other examples could be given if necessary. It should be noted that an answer to any of these issues submitting inconsistent theories seldom forms a basis for a judgment for either the plaintiff or the defendant. As a general rule it serves only as a basis for a conflict in the findings of the jury, and thus requires a new trial. For example, in a tort case liability or non-liability would ordinarily depend upon the jury's finding of negligence or contributory negligence; and if a final judgment is to be entered in favor of either party in such a case, it must be on the jury's findings in answer to these issues. Where the jury finds either negligence or contributory negligence, a finding of the existence or nonexistence of unavoidable accident would ordinarily not form the basis of a judgment for either party. At most, it would produce a conflict and require a new trial. The same would be true of the jury's findings on any other inconsistent theory that could be raised under the general denial.

"Touching the matter of these inconsistent theories, Rule 279 contains a very pertinent amendment. It provides that, except in certain cases not here important, 'A party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part.'

"This provision is not intended to cut off a defendant's right to present inconsistent theories for the consideration of the jury. He will still have a right to raise such issue by the evidence, and may use same in his argument to the jury in an effort to induce the jury to find against plaintiff's theory of the case. But under the above rule he will not be entitled to an affirmative submission of an *issue* on such inconsistent theory, unless he has affirmatively pleaded it." James P. Alexander, Lecture before Judicial Section, State Bar of Texas, July 3, 1941.

"Looking again at Rule 279, we find that the right of a defendant, as it now stands, to demand an affirmative submission of any material defensive theory supported by the evidence, though raised only by a general denial, is set aside, except in a few special actions; and in all ordinary suits a defendant, to preserve that right must affirmatively plead the defense, as well as have supporting evidence. Any such theory, however, may still be raised as formerly by a general denial, and that will suffice if the defendant is content to have the right simply to put in proof of his theory and argue same to the jury in opposition to the plaintiff's theory of the case. In other words, a defendant by resort to the necessary pleading, thus giving notice to the plaintiff, may still insist upon an affirmative submission of such issues as unavoidable accident, or that the parol contract in issue was not in the terms alleged by the plaintiff, but in certain other terms alleged by the defendant, and the numerous other catalogue of familiar defenses heretofore raised in regular course under a mere general denial. The result doubtless, will be to expand defensive pleading, but that is thought to be justified for the purpose of definite notice to the plaintiff." J. B. Dooley, 20 Texas L.Rev. 37 (1941).

**No reversal where "controlling issues" submitted**

"Said Rule 279 further provides: 'Where the court has fairly submitted the controlling issues raised by such pleading and evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue.' The term 'controlling issue' is not defined, and is practically incapable of definition. The term was used by the committee because of the lack of a better one. The object, purpose, and meaning of the rule can be more easily illustrated than defined. A practice has grown up, particularly in tort cases, under which the plaintiff charges the defendant with negligence on every theory capable of being drawn from the evidence, with the view of making the defendant's conduct look as ugly as possible, and with the hope of securing a favorable finding from the jury on at least one of such charges; and the defendant, for the same purpose, and with the added hope of securing a conflict in the findings of the jury, replies in kind, but with more of it. When it comes time to submit the case to the jury, each party insists that he is entitled to have each of such theories separately submitted. The result is that an unnecessary multitude of issues is submitted to the jury. Take for example the case of the man who jaywalks across a

street at night and is injured by an automobile. There is only one controlling issue as to his contributory negligence, and that is whether, under the circumstances, he was negligent in attempting to cross the street as he did at a place other than a regular crossing. It should not be necessary to separately submit to the jury the issue as to whether he was negligent in failing to cross at a regular crossing, or in failing to carry a red lantern, or in failing to wear a white handkerchief around his neck, or in wearing a dark gray suit nearly the color of the street. These are but various phases or different shades of the same issue. In a suit arising out of a highway collision the plaintiff often charges that the defendant was on a wrong side of the road, and that he was driving in the center of the road, and that he failed to yield one-half of the road. Obviously, the controlling issue is whether the defendant's automobile was traveling in whole or in part on the wrong side of the road. If that issue is submitted, it will be unnecessary to submit the other issues as to whether he was driving in the center of the road or failed to yield one-half of the road.

"Ordinarily, if the trial judge will examine his case carefully before beginning the preparation of his charge, he will be able to reduce the case to a very few controlling issues. Under the above rule, when he fairly submits the controlling issues, the case will not be reversed because of his failure to 'pulverize' the issues." James P. Alexander, Lecture before Judicial Section, State Bar of Texas, July 3, 1941.

"This rule makes plain provision for a check to curtail the number of issues submitted. The court need only submit the 'controlling issues,' and, having done that, 'the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue.' The objective of keeping the number of issues in a case within reasonable bounds is also fortified in Rule 274, which penalizes, in the right to appellate complaint, a party who swamps the trial court with numerous unnecessary requested issues tending to screen any particular requested issue like the proverbial needle in a haystack." J. B. Dooley, 20 Texas L.Rev. 37 (1941).

**Tender of "substantially correct" requested issues and instructions**

"It will be noted that Rule 279 provides in substance that the failure to submit an issue, define a term or give an explanatory instruction shall not be reversible error, unless the issue, definition, or instruction is *tendered* in substantially correct form by the party relying on such issue or requesting such definition or instruction. Heretofore a party requesting a definition of a legal term was not required to provide the court with the form thereof. This rule is now changed so that the party requesting the definition must *tender* the instruction which he desires to have given. It will also be noted that the issue, definition, or instruction must be tendered in *substantially* correct form. This does not mean that it must be absolutely correct, nor does it mean that one that is *merely sufficient to call the matter to the attention of the court* will suffice. It means one that in substance and in the main is correct, and that is not affirmatively incorrect.

"Again I call the trial judges' attention to the fact that this provision, as well as many others, is for the protection of the trial judge. It is intended to enable him to secure the full co-operation of the attorneys, but it is not intended to encourage a judge to neglect his responsibilities in the trial of the case. While a trial judge should never comment on the weight of the evidence or otherwise indicate to the jury his opinion on the matters to be submitted to the jury, yet this does not mean that he should permit himself to be relegated to the position of a mere moderator. He should assume control of the trial and direct its course, and if in his opinion an instruction is necessary in order to meet the ends of justice, he should see that such instruction is given, even though it is not requested in correct form, and even though no reversible error would be presented if such instruction was not given." James P. Alexander, Lecture before Judicial Section, State Bar of Texas, July 3, 1941.

"The rule retains the present practice that a party has no standing for appellate complaint on the ground that the trial court failed to submit an issue material to his cause of action or ground of defense, unless the party requested said issue in substantially proper wording in the trial court, but rightfully qualifies the requirement by adding: 'provided, however, that objection to such failure shall suffice in such respect if the issue is one relied upon by the opposing party.'

"The present practice is that a party may save the point by a mere objection to the failure of the court to submit a proper explanation or definition pertinent to some term of technical meaning contained in the trial court's charge. The new rule, changing the practice on that point, will make it necessary for the party who finds any fault with the failure of the court to submit a definition or explanatory instruction to request a substantially correct definition or explanatory instruction as a predicate for any appellate complaint, and as I read it, this requirement holds good whether the missing definition or explanatory instruction relates to a question material to the complaining party's theory of the case or material to the other party's theory of the case." J. B. Dooley, 20 Texas L.Rev. 38 (1941).

**Omitted issues and presumed findings**

Speaking of the first sentence in the last paragraph of Rule 279, Judge Alexander says:

"This is substantially the rule as previously announced by the Supreme Court in the Pepper case. [Wichita Falls & O. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79 (1940)] It was not the intention of the committee to make any change in the rule, but merely to announce it as it had been formulated by the Court. Under this rule, if a ground of recovery or of defense is wholly ignored or neglected, and no issue is submitted or requested thereon, it will be held to have been waived and no recovery or defense can be based thereon. If, however, the grounds of recovery or of defense consist of more than one element--that is, require more than one issue to submit them--and the court submits some of the elements but omits others, and there is no objection to the failure to submit same, the parties will be placed in the position of having agreed to waive a jury trial on the unsubmitted elements and to have submitted them to the court for his determination. Either party, after notice and before final judgment is rendered, may request the court to make an express finding on such issues. In such an event the judge may find as he thinks the evidence justifies. If he does not make such finding, then, on appeal, it will be presumed that the court found on such unsubmitted elements in such manner as to support the judgment." James P. Alexander, Lecture before Judicial Section, State Bar of Texas, July 3, 1941.

"The above language (see last paragraph, Rule 279) describing when the court may make a finding on omitted issues or such finding may be presumed seems to be a compound of what our courts have said in three well-known case. [Wichita Falls & O. Ry. Co. v. Pepper, 1940, 134 T. 360, 135 S.W.2d 79; Ormsby v. Ratcliffe, 1928, 117 T. 242, 1 S.W.2d 1084; North v. Atlas Brick Co., Com.App.1929, 13 S.W.2d 59.]

"The rule seeks to clarify the practice governing presumed findings, but at the same time I see some room for serious debate about the proper construction of the rule in certain instances. These possibilities are suggested by a decision of the Court of Civil Appeals at Amarillo, in Texas Employers Insurance Association v. Reed. [Civ.App.1941, 150 S.W.2d 858, error dismissed.] That was a compensation suit. The testimony, as recognized by the appellate court, was not conclusive, but at best only sufficient in the plaintiff's behalf to raise the issue of the existence of compensation coverage applicable to plaintiff. The question of coverage was not submitted to the jury, but the omission was not made a ground of objection, nor was any issue on the subject requested. The court disposed of the point in this far-reaching language: '* * * In the instant case, however, we think the plaintiff has asserted but one ground of recovery which as a whole constitutes the ultimate issue. Such ultimate issue is whether or not he is entitled to compensation from the defendant for the injury suffered. This ultimate issue or ground of recovery is made up of several component parts. Among these are in substance the following: (1) The sustaining of accidental injuries; (2) the sustaining of such injuries in the course of his employment; (3) the extent of his injuries; (4) the duration of his injuries; (5) the coverage of the injuries by the policy; and (6) the basis for compensation rate.

"'The issue of coverage not being within itself an independent ground of recovery but being merely a component part of the ultimate issue of plaintiff's right of recovery, and portions of such ultimate issue having been submitted,

WestlawNext' © 2015 Thomson Reuters. No claim to original U.S. Government Works. 4

it follows that the trial court, if there was evidence to sustain his action, was authorized to find upon the issue of coverage in support of the judgment. * * *'

"The usual example used in discussing the subject of presumed findings is the series of questions involved in an ordinary negligence case. These questions are: (1) whether the defendant did the act, or suffered the omission alleged; and (2) whether such act or omission if found, was negligence; and (3) whether such negligence, if any, was the proximate cause of injuries to the plaintiff. These are interdependent and kindred issues in a proper sense. They deal with the same subject, that is, the alleged act or omission. The first relates to the existence of the subject, and if there is an affirmative finding, then the second determines the quality of the subject, and the third determines the causal consequences of the subject. The submission of any one of said issues is a partial submission of the whole inquiry covered by the three affiliated issues. The submission of any one of said issues ought to bring any unsubmitted issue of the group within the provision for presumed findings.

"The defense of estoppel similarly involves multiple elements naturally covered by a series of kindred issues dealing in turn with, say, an alleged misrepresentation or concealment, and, if same was committed, then whether it was done to mislead the other party and whether the latter was misled to his detriment.

"The well-known Pepper case furnishes another clear instance. The plaintiff sued for overflow damage to his cotton crop. The trial court submitted the question of how many bales of cotton the plaintiff would have grown but for the flood damage. The jury made a finding. The court failed to ask the jury how many bales of cotton the plaintiff actually raised on the land. This last issue went unsubmitted without a request or objection. The two issues, one submitted and the other unsubmitted, were clearly complementary in nature. They went to the same subject, the measure of damages. The Supreme Court held a presumed finding on the unsubmitted issue, there being the necessary evidence, was proper in support of the judgment.

"Similarly in the Reed case above mentioned, there is some reason to class certain of the issues enumerated by the court as kindred issues. The series of issues covering the questions whether the plaintiff sustained accidental personal injuries, and what incapacity, whether total or partial, resulted from any such injuries, and the duration of any incapacity, make an affiliated set dealing with the subject of the plaintiff's injuries and ensuing results. The question, however, whether there was a compensation insurance policy covering plaintiff's employment seems to be a separate and distinct inquiry. Let us suppose a negligence suit brought by a plaintiff against a defendant-employer for injuries sustained in a collision between an automobile occupied by plaintiff and a truck driven by a person alleged to have been the defendant's servants in the course of his employment; and say that the evidence makes it a controverted issue whether the driver of the truck was in fact the defendant's employee in the course of his employment at the time. In submitting the case the court puts to the jury issues to determine whether the truck driver was guilty of the fault alleged by plaintiff, and whether such act or omission, if done, was negligence, and whether such negligence, if any, was the proximate cause of plaintiff's injuries, but fails to submit any issue, and none is requested, to have the jury find whether the truck driver was the defendant's servant acting in the course of his employment at the time of the collision. In my opinion the general understanding of lawyers is that a judgment for plaintiff under said circumstances could not be sustained by indulging a presumed finding that the driver was the defendant's servant in the due course of his employment at said time. This for the reason that said question is an inquiry distinct and independent from the questions submitted by the court. The Reed case, however, seems to point to the contrary. It apparently bears the construction that whenever any material issue, even only one, is submitted and a verdict thereon is rendered, then, given proper supporting evidence, any other issue or issues not submitted, nor covered by a request or objection, may be made the subject of presumed findings; without any further limitation whatever in suits confined to a single alleged cause of action and free of any affirmative defense, such as frequently found in partnership accounting, ordinary actionable fraud, boundary, reformation, and workmen's compensation suits, and without limitation in more complex suits except that in joining an actual jury finding and presumed findings it is not permissible to cross the line between definitely separate and independent grounds of recovery or defense. That, as you will readily sense, would open up a

vista of new impetus to this procedural device. In passing, it may be said that there is another Court of Civil Appeals' decision seemingly in conflict with the recent case above discussed. [Texas Employers' Ins. Ass'n v. Hilderbrandt, Civ.App.1933, 62 S.W.2d 209].

"Under the express terms of Rule 279, the authority for a presumed finding on any unsubmitted issue belonging to a given ground of recovery or defense depends upon there having been a submission of some other issue 'necessarily referable' to that same ground of recovery or defense. This requirement seems to fit the case of an overlapping issue common to two distinct and independent theories such as in a broker's suit brought both on express contract and alternatively on implied contract, where the question of whether the plaintiff was the procuring cause of the deal is material to a recovery on either express or implied contract. Then again, that part of the rule may reach a situation suggested by the opinion in the Pepper case. Some of the illustrative language in that opinion could be construed to mean that in a negligence case a partial submission covering an alleged ground of negligence would sustain a presumed finding of the amount of damages, and vice versa. The damage issue, however, might be treated as simply going to the plaintiff's remedy or redress for the wrong constituting his ground of recovery. The damage issue in that sense could be regarded as separate from the literal ground of recovery. The point is that whatever damages the plaintiff has suffered have been sustained regardless of negligence, vel non, and from that standpoint the question of damages is not necessarily referable to any ground of recovery. The same thought may be brought out from another direction. The plaintiff's suit may be based on two distinct grounds of negligence, and there may be proof in support of each, but we will say only one of these grounds is submitted and the issue of damages again goes unsubmitted without objection or request. Then it is evident that the question of damages is no more referable to the ground of negligence submitted than to the ground not submitted.

"The said rule makes a new departure as far as formal provision is concerned regarding presumed findings, as the rule permits the trial judge to make express findings where the circumstances are proper instead of leaving the questions to the operation of presumed findings. The courts of Texas, however, have exercised this very power without express authority in the statutes, [Ward v. Etier, 1923, 113 Tex. 83, 251 S.W.2d 1028] and so, after all, there is no real novelty in the point. The provision, as I see it, is a very reasonable one. The provision for presumed findings must logically rest upon the theory that there has been a waiver of jury trial in respect to the particular issues. The federal rules which will be noticed presently contain a similar provision for presumed findings and expressly recognize that such authority proceeds on a theory of waiver of jury trial upon such issues. Once the theory of waiver is admitted, then in reason the court ought to be granted the right and power to make express findings. Express findings have a reality while presumed findings are rather artificial. A logical consequence of the judge's right and power to make express findings is that he is free to decide the particular issue either way, assuming a conflict in the evidence, and is not bound to decide the issue in favor of the same party who has prevailed in the partial findings made by the jury. This is not a new suggestion in Texas, and instead finds an example in a Supreme Court decision. [Nixon v. Hirschi, 1940, 134 Tex. 415, 136 S.W.2d 583]" J. B. Dooley, 20 Texas L.Rev. 39-43 (1941).

Following is an excerpt from Stayton, Analysis of Changes, 4 Texas Bar J. 667 (1941), pertaining to the 1941 Amendment.

"In the original text of the rule which gave a prescription for presumed findings in special issue situations there was some wording that was not in accordance with the prescription established in the cases of Ormsby v. Ratcliffe, 117 Tex. 242, and Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360. Such wording has been eliminated, and the prescription for presumed findings which is established in the cases above cited has been clearly announced."

## OPINIONS OF SUBCOMMITTEE ON INTERPRETATION OF RULES
### Affirmative submission

The sentence: "A party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part", applies to so-called issues that can be raised under the general denial. It does not refer to theories under affirmative pleading either of plaintiff or of defendant, whether general or particular. In the latter respect the rules make no change from the former practice. If, under the former practice, a plaintiff using general affirmative pleading was entitled to affirmative submission on various phases of negligence he is still entitled to such submission, insofar as pleading is concerned. 5 Texas B.J. 288 (1942); 8 Texas B.J. 21 (1945).

**Appeals from justice to county courts**

While the written pleadings in the county court are the pleadings upon which the case is tried, if the trial is upon certain proof that is variant from or has no support in the written pleadings, but no objection or the like is made to the variance or departure, Rule 67 applies and it will be as though there had been sufficient pleading. See also Rule 66 as to ready amendment if objection is made. Upon a special issue submission all pleadings relied upon in the submission would have to be in writing, under Rules 67, 277, and 279, unless the defect should be waived under Rule 274. 5 Texas B.J. 287 (1942); 8 Texas B.J. 19 (1945).

**Unavoidable accident**

A defendant in a negligence case must specifically plead the issue of unavoidable accident to entitle him to an affirmative submission of such issue. Defendant's right to present inconsistent defensive theories under the general denial is not cut off by this Rule. He may introduce evidence on the point and argue to the jury that the injury and damage to the plaintiff were the result of unavoidable accident, but if he desires an affirmative submission of such issue, he must plead it. 5 Texas B.J. 236 (1942); 8 Texas B.J. 17 (1945).

**Lack of pleadings to support**

"Issues submitted without written pleadings to support them will not be erroneous upon that ground unless objection upon that ground is made." 6 Texas B.J. 77 (1943); 8 Texas B.J. 33 (1945).

**Burden of proof**

This Rule does not change the burden of proof from what it would have been under the general denial. 5 Texas B.J. 236 (1942); 8 Texas B.J. 17 (1945).

Notes of Decisions (3338)

Vernon's Ann. Texas Rules Civ. Proc., Rule 279, TX R RCP Rule 279
Current with amendments received through August 15, 2014

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.